# CARTER *v.* UNITED STATES

No. 99–5716.   Argued April 19, 2000—Decided June 12, 2000

258

THOMAS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, and KENNEDY, JJ., joined. GINSBURG, J., filed a dissenting opinion, in which STEVENS, SOUTER, and BREYER, JJ., joined, *post*, p. 275.

*Donald J. McCauley* argued the cause for petitioner. With him on the briefs were *Richard Coughlin, Jeffrey T. Green,* and *Joseph S. Miller.*

*David C. Frederick* argued the cause for the United States. With him on the brief were *Solicitor General Waxman, Assistant Attorney General Robinson, Deputy Solicitor General Dreeben,* and *Thomas E. Booth.** 

JUSTICE THOMAS delivered the opinion of the Court.

In *Schmuck* v. *United States,* 489 U. S. 705 (1989), we held that a defendant who requests a jury instruction on a lesser offense under Rule 31(c) of the Federal Rules of Criminal Procedure must demonstrate that "the elements of the lesser offense are a subset of the elements of the charged offense." *Id.,* at 716. This case requires us to apply this elements test to the offenses described by 18 U. S. C. §§2113(a) and (b)

---

*\*Joshua L. Dratel* filed a brief for the National Association of Criminal Defense Lawyers et al. as *amici curiae* urging reversal.

(1994 ed. and Supp. IV). The former punishes "[w]hoever, by force and violence, or by intimidation, takes . . . from the person or presence of another . . . any . . . thing of value belonging to, or in the . . . possession of, any bank . . . ." The latter, which entails less severe penalties, punishes, *inter alia*, "[w]hoever takes and carries away, with intent to steal or purloin, any . . . thing of value exceeding $1,000 belonging to, or in the . . . possession of, any bank . . . ." We hold that § 2113(b) requires an element not required by § 2113(a)—three in fact—and therefore is not a lesser included offense of § 2113(a). Petitioner is accordingly prohibited as a matter of law from obtaining a lesser included offense instruction on the offense described by § 2113(b).

## I

On September 9, 1997, petitioner Floyd J. Carter donned a ski mask and entered the Collective Federal Savings Bank in Hamilton Township, New Jersey. Carter confronted a customer who was exiting the bank and pushed her back inside. She screamed, startling others in the bank. Undeterred, Carter ran into the bank and leaped over the customer service counter and through one of the teller windows. One of the tellers rushed into the manager's office. Meanwhile, Carter opened several teller drawers and emptied the money into a bag. After having removed almost $16,000 in currency, Carter jumped back over the counter and fled from the scene. Later that day, the police apprehended him.

A grand jury indicted Carter, charging him with violating § 2113(a). While not contesting the basic facts of the episode, Carter pleaded not guilty on the theory that he had not taken the bank's money "by force and violence, or by intimidation," as § 2113(a) requires. Before trial, Carter moved that the court instruct the jury on the offense described by § 2113(b) as a lesser included offense of the offense described by § 2113(a). The District Court, relying

on *United States* v. *Mosley,* 126 F. 3d 200 (CA3 1997),[1] denied the motion in a preliminary ruling. At the close of the Government's case, the District Court denied Carter's motion for a judgment of acquittal and indicated that the preliminary ruling denying the lesser included offense instruction would stand. The jury, instructed on §2113(a) alone, returned a guilty verdict, and the District Court entered judgment pursuant to that verdict.

The Court of Appeals for the Third Circuit affirmed in an unpublished opinion, relying on its earlier decision in *Mosley.* Judgment order reported at 185 F. 3d 863 (1999). While the Ninth Circuit agrees with the Third that a lesser offense instruction is precluded in this context, see *United States* v. *Gregory,* 891 F. 2d 732, 734 (CA9 1989), other Circuits have held to the contrary, see *United States* v. *Walker,* 75 F. 3d 178, 180 (CA4 1996); *United States* v. *Brittain,* 41 F. 3d 1409, 1410 (CA10 1994). We granted certiorari to resolve the conflict, 528 U. S. 1060 (1999), and now affirm.

## II

In *Schmuck, supra,* we were called upon to interpret Federal Rule of Criminal Procedure 31(c)'s provision that "[t]he defendant may be found guilty of an offense necessarily included in the offense charged." We held that this provision requires application of an elements test, under which "one offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense." 489 U. S., at 716.[2] The

---

[1] We granted certiorari in *Mosley* to address the issue that we resolve today, *Mosley* v. *United States,* 523 U. S. 1019 (1997), but dismissed the petition in that case upon the death of the petitioner, 525 U. S. 120 (1998) *(per curiam).*

[2] By "lesser offense," *Schmuck* meant lesser in terms of magnitude of punishment. When the elements of such a "lesser offense" are a subset of the elements of the charged offense, the "lesser offense" attains the status of a "lesser *included* offense."

elements test requires "a textual comparison of criminal statutes," an approach that, we explained, lends itself to "certain and predictable" outcomes. *Id.*, at 720.[3]

Applying the test, we held that the offense of tampering with an odometer, 15 U. S. C. §§ 1984 and 1990c(a) (1982 ed.), is not a lesser included offense of mail fraud, 18 U. S. C. § 1341. We explained that mail fraud requires two elements—(1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts). The lesser offense of odometer tampering, however, requires the element of knowingly and willfully causing an odometer to be altered, an element that is absent from the offense of mail fraud. Accordingly, the elements of odometer tampering are not a subset of the elements of mail fraud, and a defendant charged with the latter is not entitled to an instruction on the former under Rule 31(c). *Schmuck, supra,* at 721–722.

Turning to the instant case, the Government contends that three elements required by § 2113(b)'s first paragraph are *not* required by § 2113(a): (1) specific intent to steal; (2) asportation; and (3) valuation exceeding $1,000. The statute provides:

"§ 2113. Bank robbery and incidental crimes

"(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control,

---

[3] A defendant must also satisfy the "independent prerequisite . . . that the evidence at trial . . . be such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater." *Schmuck*, 489 U. S., at 716, n. 8 (citing *Keeble* v. *United States*, 412 U. S. 205, 208 (1973)). In light of our holding that petitioner fails to satisfy the elements test, we need not address the latter requirement in this case.

management, or possession of, any bank, credit union, or any savings and loan association . . .

.    .    .    .    .

"Shall be fined under this title or imprisoned not more than twenty years, or both.

"(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $1,000 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined under this title or imprisoned not more than ten years, or both; or

"Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $1,000 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

A "textual comparison" of the elements of these offenses suggests that the Government is correct. First, whereas subsection (b) requires that the defendant act "with intent to steal or purloin," subsection (a) contains no similar requirement. Second, whereas subsection (b) requires that the defendant "tak[e] and carr[y] away" the property, subsection (a) only requires that the defendant "tak[e]" the property. Third, whereas the first paragraph of subsection (b) requires that the property have a "value exceeding $1,000," subsection (a) contains no valuation requirement. These extra clauses in subsection (b) "cannot be regarded as mere surplusage; [they] mea[n] something." *Potter* v. *United States,* 155 U. S. 438, 446 (1894).

Carter urges that the foregoing application of *Schmuck*'s elements test is too rigid and submits that ordinary principles of statutory interpretation are relevant to the *Schmuck* inquiry. We do not dispute the latter proposition. The

*Schmuck* test, after all, requires an exercise in statutory interpretation before the comparison of elements may be made, and it is only sensible that normal principles of statutory construction apply. We disagree, however, with petitioner's conclusion that such principles counsel a departure in this case from what is indicated by a straightforward reading of the text.

## III

We begin with the arguments pertinent to the general relationship between §§ 2113(a) and (b). Carter first contends that the structure of § 2113 supports the view that subsection (b) is a lesser included offense of subsection (a). He points to subsection (c) of § 2113, which imposes criminal liability on a person who knowingly "receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value which has been taken or stolen from a bank . . . in violation of *subsection (b)*." (Emphasis added.) It would be anomalous, posits Carter, for subsection (c) to apply—as its text plainly provides—only to the fence who receives property from a violator of subsection (b) but not to the fence who receives property from a violator of subsection (a). The anomaly disappears, he concludes, only if subsection (b) is always violated when subsection (a) is violated—*i. e.*, only if subsection (b) is a lesser included offense of subsection (a).

But Carter's anomaly—even if it truly exists—is only an anomaly. Petitioner does not claim, and we tend to doubt, that it rises to the level of absurdity. Cf. *Green* v. *Bock Laundry Machine Co.*, 490 U. S. 504, 509–511 (1989); *id.*, at 527 (SCALIA, J., concurring in judgment). For example, it may be that violators of subsection (a) generally act alone, while violators of subsection (b) are commonly assisted by fences. In such a state of affairs, a sensible Congress may have thought it necessary to punish only the fences of property taken in violation of subsection (b). Or Congress may have thought that a defendant who violates subsection (a)

usually—if not inevitably—also violates subsection (b), so that the fence may be punished by reference to that latter violation. In any event, nothing in subsection (c) purports to redefine the elements required by the text of subsections (a) and (b).

Carter's second argument is more substantial. He submits that, insofar as subsections (a) and (b) are *similar* to the common-law crimes of robbery and larceny, we must assume that subsections (a) and (b) require the *same* elements as their common-law predecessors, at least absent Congress' affirmative indication (whether in text or legislative history) of an intent to displace the common-law scheme. While we (and the Government) agree that the statutory crimes at issue here bear a close resemblance to the common-law crimes of robbery and larceny, see Brief for United States 29 (citing 4 W. Blackstone, Commentaries *229, *232); accord, *post*, at 278–279, that observation is beside the point. The canon on imputing common-law meaning applies only when Congress makes use of a statutory *term* with established meaning at common law, and Carter does not point to any such term in the text of the statute.

This limited scope of the canon on imputing common-law meaning has long been understood. In *Morissette* v. *United States,* 342 U. S. 246 (1952), for example, we articulated the canon in this way:

> "[W]here Congress borrows *terms* of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed *word* in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them." *Id.,* at 263 (emphasis added).

In other words, a "cluster of ideas" from the common law should be imported into statutory text only when Congress employs a common-law *term*, and not when, as here, Congress simply describes an offense analogous to a common-law crime without using common-law terms.

We made this clear in *United States* v. *Wells*, 519 U. S. 482 (1997). At issue was whether 18 U. S. C. § 1014—which punishes a person who "knowingly makes any false statement or report . . . for the purpose of influencing in any way the action" of a Federal Deposit Insurance Corporation insured bank "upon any application, advance, . . . commitment, or loan"—requires proof of the materiality of the "false statement." The defendants contended that since materiality was a required element of "false statement"-type offenses at common law, it must also be required by § 1014. Although JUSTICE STEVENS in dissent thought the argument to be meritorious, we rejected it:

> "[F]undamentally, we disagree with our colleague's apparent view that any term that is an element of a common-law crime carries with it every other aspect of that common-law crime when the term is used in a statute. JUSTICE STEVENS seems to assume that because 'false statement' is an element of perjury, and perjury criminalizes only material statements, a statute criminalizing 'false statements' covers only material statements. By a parity of reasoning, because common-law perjury involved statements under oath, a statute criminalizing a false statement would reach only statements under oath. It is impossible to believe that Congress intended to impose such restrictions *sub silentio*, however, and so *our rule on imputing common-law meaning to statutory terms does not sweep so broadly.*" 519 U. S., at 492, n. 10 (emphasis added; citation omitted).[4]

---

[4] The dissent claims that our decision in *United States* v. *Wells*, 519 U. S. 482 (1997), is not in point because we went on in *Wells* to discuss the evolution of the statute (specifically, a recodification of numerous sections),

Similarly, in *United States* v. *Turley*, 352 U. S. 407 (1957), we declined to look to the analogous common-law crime because the statutory term at issue—"stolen"—had no meaning at common law. See *id.*, at 411–412 ("[W]hile 'stolen' is constantly identified with larceny, the term was never at common law equated or exclusively dedicated to larceny" (internal quotation marks omitted)).

By contrast, we have not hesitated to turn to the common law for guidance when the relevant statutory text *does* contain a term with an established meaning at common law. In *Neder* v. *United States*, 527 U. S. 1 (1999), for example, we addressed whether materiality is required by federal statutes punishing a "scheme or artifice to defraud." *Id.*, at 20, and 20–21, nn. 3–4 (citing 18 U. S. C. §§ 1341, 1343, 1344). Unlike the statute in *Wells*, which contained no common-law term, these statutes did include a common-law term—"defraud." 527 U. S., at 22. Because common-law fraud required proof of materiality, we applied the canon to hold that these federal statutes implicitly contain a materiality requirement as well. *Id.*, at 23. Similarly, in *Evans* v. *United States*, 504 U. S. 255, 261–264 (1992), we observed that "extortion" in 18 U. S. C. § 1951 was a common-law term, and proceeded to interpret this term by reference to its meaning at common law.

Here, it is undisputed that "robbery" and "larceny" are terms with established meanings at common law. But nei-

---

which revealed Congress' apparent care in retaining a materiality requirement in certain sections while omitting it in others, such as the one before us in *Wells*. According to the dissent, a similar statutory evolution is not present here. See *post*, at 286. But, even assuming the dissent is correct in this latter regard, the holding in *Wells* simply cannot be deemed to rest on our discussion of the statute's evolution. Rather, we characterized that discussion as supporting a result we had already reached on textual grounds. See 519 U. S., at 492 ("Statutory history confirms the natural reading").

ther term appears in the text of §2113(a) or §2113(b).[5] While the term "robbery" does appear in §2113's title, the title of a statute " '[is] of use only when [it] shed[s] light on some ambiguous word or phrase' " in the statute itself. *Pennsylvania Dept. of Corrections* v. *Yeskey*, 524 U. S. 206, 212 (1998) (quoting *Trainmen* v. *Baltimore & Ohio R. Co.*, 331 U. S. 519, 528–529 (1947) (modifications in original)). And Carter does not claim that this title illuminates any such ambiguous language. Accordingly, the canon on imputing common-law meaning has no bearing on this case.

## IV

We turn now to Carter's more specific arguments concerning the "extra" elements of §2113(b). While conceding the absence of three of §2113(b)'s requirements from the text of §2113(a)—(1) "intent to steal or purloin"; (2) "takes *and carries away*," *i. e.*, asportation; and (3) "value exceeding $1,000" (first paragraph)—Carter claims that the first two should be deemed implicit in §2113(a), and that the third is not an element at all.

## A

As to "intent to steal or purloin," it will be recalled that the text of subsection (b) requires a specific "intent to steal or purloin," whereas subsection (a) contains no explicit *mens rea* requirement of any kind. Carter nevertheless argues that such a *specific intent* requirement must be deemed implicitly present in §2113(a) by virtue of "our cases interpreting criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms

---

[5] Congress could have simply punished "robbery" or "larceny" as some States have done (and as Congress itself has done elsewhere, see, *e. g.*, 18 U. S. C. §§2112, 2114, 2115), thereby leaving the definition of these terms to the common law, but Congress instead followed the more prevalent legislative practice of spelling out elements of these crimes. See 2 W. LaFave & A. Scott, Substantive Criminal Law §8.11, p. 438, n. 6 (1986).

does not contain them." *United States* v. *X-Citement Video, Inc.*, 513 U. S. 64, 70 (1994).[6] Properly applied to § 2113, however, the presumption in favor of scienter demands only that we read subsection (a) as requiring proof of *general intent*—that is, that the defendant possessed knowledge with respect to the *actus reus* of the crime (here, the taking of property of another by force and violence or intimidation).

Before explaining why this is so under our cases, an example, *United States* v. *Lewis*, 628 F. 2d 1276, 1279 (CA10 1980), cert. denied, 450 U. S. 924 (1981), will help to make the distinction between "general" and "specific" intent less esoteric. In *Lewis*, a person entered a bank and took money from a teller at gunpoint, but deliberately failed to make a quick getaway from the bank in the hope of being arrested so that he would be returned to prison and treated for alcoholism. Though this defendant knowingly engaged in the acts of using force and taking money (satisfying "general intent"), he did not intend permanently to deprive the bank of its possession of the money (failing to satisfy "specific intent").[7] See generally 1 W. LaFave & A. Scott, Substantive Criminal

---

[6] This interpretive principle exists quite apart from the canon on imputing common-law meaning. See, *e. g.*, *X-Citement Video*, 513 U. S., at 70 (applying presumption in favor of scienter to statute proscribing the shipping or receiving of visual depictions of minors engaging in sexually explicit conduct, without first inquiring as to the existence of a common-law antecedent to this offense); *Staples* v. *United States*, 511 U. S. 600 (1994) (similar).

[7] The dissent claims that the *Lewis* court determined that the jury could have found specific intent to steal on the facts presented, and thus disputes our characterization of the case as illustrating a situation where a defendant acts only with general intent. *Post*, at 283–284 (citing *Lewis*, 628 F. 2d, at 1279). The dissent fails to acknowledge, however, that the *Lewis* court made this determination only because some evidence suggested that, if the defendant had not been arrested, he would have kept the stolen money. *Ibid.* The *Lewis* court, implicitly acknowledging the possibility that some defendant (if not Lewis) might unconditionally intend to turn himself in after completing a bank theft, proceeded to hold, in the alternative, that § 2113(a) covers a defendant who acts only with general intent. See *ibid.*

Law § 3.5, p. 315 (1986) (distinguishing general from specific intent).

The presumption in favor of scienter requires a court to read into a statute only that *mens rea* which is necessary to separate wrongful conduct from "otherwise innocent conduct." *X-Citement Video, supra,* at 72. In *Staples* v. *United States,* 511 U. S. 600 (1994), for example, to avoid criminalizing the innocent activity of gun ownership, we interpreted a federal firearms statute to require proof that the defendant knew that the weapon he possessed had the characteristics bringing it within the scope of the statute. *Id.,* at 611–612. See also, *e. g., Liparota* v. *United States,* 471 U. S. 419, 426 (1985); *Morissette,* 342 U. S., at 270–271. By contrast, some situations may call for implying a specific intent requirement into statutory text. Suppose, for example, a statute identical to § 2113(b) but without the words "intent to steal or purloin." Such a statute would run the risk of punishing seemingly innocent conduct in the case of a defendant who peaceably takes money believing it to be his. Reading the statute to require that the defendant possess general intent with respect to the *actus reus*—i. e., that he know that he is physically taking the money—would fail to protect the innocent actor. The statute therefore would need to be read to require not only general intent, but also specific intent—i. e., that the defendant take the money with "intent to steal or purloin."

In this case, as in *Staples,* a general intent requirement suffices to separate wrongful from "otherwise innocent" conduct. Section 2113(a) certainly should not be interpreted to apply to the hypothetical person who engages in forceful taking of money while sleepwalking (innocent, if aberrant activity), but this result is accomplished simply by requiring, as *Staples* did, general intent—i. e., proof of knowledge with respect to the *actus reus* of the crime. And once this mental state and *actus reus* are shown, the concerns underlying the presumption in favor of scienter are fully satis-

fied, for a forceful taking—even by a defendant who takes under a good-faith claim of right—falls outside the realm of the "otherwise innocent." Thus, the presumption in favor of scienter does not justify reading a specific intent requirement—"intent to steal or purloin"—into § 2113(a).[8]

Independent of his reliance upon the presumption in favor of scienter, Carter argues that the legislative history of § 2113 supports the notion that an "intent to steal" requirement should be read into § 2113(a). Carter points out that, in 1934, Congress enacted what is now § 2113(a), but with the adverb "feloniously" (which all agree is equivalent to "intent to steal") modifying the verb "takes." Act of May 18, 1934, ch. 304, § 2(a), 48 Stat. 783. In 1937, Congress added what is now § 2113(b). Act of Aug. 24, 1937, ch. 747, 50 Stat. 749. Finally, in 1948, Congress made two changes to § 2113, deleting "feloniously" from what is now § 2113(a) and dividing the "robbery" and "larceny" offenses into their own separate subsections. 62 Stat. 796.

Carter concludes that the 1948 deletion of "feloniously" was merely a stylistic change, and that Congress had no intention, in deleting that word, to drop the requirement that the defendant "feloniously" take the property—that is, with intent to steal.[9] Such reasoning, however, misunder-

---

[8] Numerous Courts of Appeals agree. While holding that § 2113(a)'s version of bank robbery is not a specific intent crime, these courts have construed the statute to contain a general intent requirement. See *United States* v. *Gonyea*, 140 F. 3d 649, 653–654, and n. 10 (CA6 1998) (collecting cases).

[9] Relatedly, Carter argues that, even if a sensible Congress might have deleted "feloniously," the 1948 Congress did not adequately explain an intention to do so in the legislative history to the 1948 Act. He points to the House Report, which states that Congress intended only to make "changes in phraseology." H. R. Rep. No. 304, 80th Cong., 1st Sess., A135 (1947). Carter further suggests that the phraseology concern with "feloniously" was that Congress in the 1948 codification generally desired to delete references to felonies and misdemeanors in view of the statutory definition of those terms in the former 18 U. S. C. § 1. Carter fails, how-

stands our approach to statutory interpretation. In analyzing a statute, we begin by examining the text, see, *e. g.*, *Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U. S. 469, 475 (1992), not by "psychoanalyzing those who enacted it," *Bank One Chicago, N. A.* v. *Midwest Bank & Trust Co.*, 516 U. S. 264, 279 (1996) (SCALIA, J., concurring in part and concurring in judgment). While "feloniously" no doubt would be sufficient to convey a specific intent requirement akin to the one spelled out in subsection (b), the word simply does not appear in subsection (a).

Contrary to the dissent's suggestion, *post*, at 283–284, this reading is not a fanciful one. The absence of a specific intent requirement from subsection (a), for example, permits the statute to reach cases like *Lewis*, see *supra*, at 268, where an ex-convict robs a bank because he wants to be apprehended and returned to prison. (The Government represents that indictments on this same fact pattern (which invariably plead out and hence do not result in reported decisions) are brought "as often as every year," Brief for United States 22, n. 13.) It can hardly be said, therefore, that it would have been absurd to delete "feloniously" in order to reach such defendants. And once we have made that determination, our inquiry into legislative motivation is at an end. Cf. *Bock Laundry Machine Co.*, 490 U. S., at 510–511.[10]

---

ever, to acknowledge that the House Report does not give that reason for the deletion of "feloniously" from § 2113, even though it explicitly does so in connection with the simultaneous elimination of similar language from other sections. See, *e. g.*, H. R. Rep. No. 304, *supra*, at A67 ("References to offenses as felonies or misdemeanors were omitted in view of definitive section 1 of this title") (explaining revisions to 18 U. S. C. § 751). As is often the case, the legislative history, even if it is relevant, supports conflicting inferences and provides scant illumination.

[10] Carter claims further support in *Prince* v. *United States*, 352 U. S. 322 (1957), for his view that § 2113(a) implicitly requires a specific "intent to steal." But *Prince* did not discuss the elements of that subsection, let alone compare them to the elements of subsection (b).

B

Turning to the second element in dispute, it will be recalled that, whereas subsection (b) requires that the defendant "tak[e] and carr[y] away the property," subsection (a) requires only that the defendant "tak[e]" the property. Carter contends that the "takes" in subsection (a) is equivalent to "takes and carries away" in subsection (b). While Carter seems to acknowledge that the argument is at war with the text of the statute, he urges that text should not be dispositive here because nothing in the evolution of § 2113(a) suggests that Congress sought to discard the asportation requirement from that subsection.

But, again, our inquiry focuses on an analysis of the textual product of Congress' efforts, not on speculation as to the internal thought processes of its Members. Congress is certainly free to outlaw bank theft that does not involve asportation, and it hardly would have been absurd for Congress to do so, since the taking-without-asportation scenario is no imagined hypothetical. See, e. g., State v. Boyle, 970 S. W. 2d 835, 836, 838–839 (Mo. Ct. App. 1998) (construing state statutory codification of common-law robbery to apply to defendant who, after taking money by threat of force, dropped the money on the spot). Indeed, a leading treatise applauds the deletion of the asportation requirement from the elements of robbery. See 2 LaFave & Scott, Substantive Criminal Law § 8.11, at 439. No doubt the common law's decision to require asportation also has its virtues. But Congress adopted a different view in § 2113(a), and it is not for us to question that choice.

C

There remains the requirement in § 2113(b)'s first paragraph that the property taken have a "value exceeding $1,000"—a requirement notably absent from § 2113(a). Carter, shifting gears from his previous arguments, concedes the textual point but claims that the valuation require-

ment does not affect the *Schmuck* elements analysis because it is a *sentencing factor*, not an element. We disagree. The structure of subsection (b) strongly suggests that its two paragraphs—the first of which requires that the property taken have "value exceeding $1,000," the second of which refers to property of "value not exceeding $1,000"—describe distinct offenses. Each begins with the word "[w]hoever," proceeds to describe identically (apart from the differing valuation requirements) the elements of the offense, and concludes by stating the prescribed punishment. That these provisions "stand on their own grammatical feet" strongly suggests that Congress intended the valuation requirement to be an element of each paragraph's offense, rather than a sentencing factor of some base § 2113(b) offense. *Jones* v. *United States,* 526 U. S. 227, 234 (1999). Even aside from the statute's structure, the "steeply higher penalties"—an enhancement from a 1-year to a 10-year maximum penalty on proof of valuation exceeding $1,000—leads us to conclude that the valuation requirement is an element of the first paragraph of subsection (b). See *Castillo* v. *United States, ante,* at 127; *Jones,* 526 U. S., at 233. Finally, the constitutional questions that would be raised by interpreting the valuation requirement to be a sentencing factor persuade us to adopt the view that the valuation requirement is an element. See *id.,* at 239–252.

The dissent agrees that the valuation requirement of subsection (b)'s first paragraph is an element, but nonetheless would hold that subsection (b) is a lesser included offense of subsection (a). *Post,* at 287–289. The dissent reasons that the "value *not* exceeding $1,000" component of § 2113(b)'s *second* paragraph is not an element of the offense described in that paragraph. Hence, the matter of value does not prevent § 2113(b)'s second paragraph from being a lesser included offense of § 2113(a). And if a defendant wishes to receive an instruction on the first paragraph of § 2113(b)—which entails more severe penalties than the sec-

ond paragraph, but is a more realistic option from the jury's standpoint in a case such as this one where the value of the property clearly exceeds $1,000—the dissent sees no reason to bar him from making that election, even though the "value exceeding $1,000" element of §2113(b)'s first paragraph is clearly absent from §2113(a).

This novel maneuver creates a problem, however. Since subsection (a) contains no valuation requirement, a defendant indicted for violating that subsection who requests an instruction under subsection (b)'s first paragraph would effectively "waive . . . his [Fifth Amendment] right to notice by indictment of the 'value exceeding $1,000' element." *Post*, at 289. But this same course would not be available to the prosecutor who seeks the insurance policy of a lesser included offense instruction under that same paragraph after determining that his case may have fallen short of proving the elements of subsection (a). For, whatever authority defense counsel may possess to waive a defendant's constitutional rights, see generally *New York* v. *Hill*, 528 U. S. 110 (2000), a prosecutor has no such power. Thus, the prosecutor would be disabled from obtaining a lesser included offense instruction under Rule 31(c), a result plainly contrary to *Schmuck*, in which we explicitly rejected an interpretive approach to the Rule that would have permitted "the defendant, by in effect waiving his right to notice, . . . [to] obtain a lesser [included] offense instruction in circumstances where the constitutional restraint of notice to the defendant would prevent the prosecutor from seeking an identical instruction," 489 U. S., at 718.

\* \* \*

We hold that §2113(b) is not a lesser included offense of §2113(a), and therefore that petitioner is not entitled to a jury instruction on §2113(b). The judgment of the Third Circuit is affirmed.

*It is so ordered.*

JUSTICE GINSBURG, with whom JUSTICE STEVENS, JUSTICE SOUTER, and JUSTICE BREYER join, dissenting.

At common law, robbery meant larceny *plus* force, violence, or putting in fear. Because robbery was an aggravated form of larceny at common law, larceny was a lesser included offense of robbery. Congress, I conclude, did not depart from that traditional understanding when it rendered "Bank robbery and incidental crimes" federal offenses. Accordingly, I would hold that petitioner Carter is not prohibited as a matter of law from obtaining an instruction on bank larceny as a lesser included offense. The Court holds that Congress, in 18 U. S. C. § 2113, has dislodged bank robbery and bank larceny from their common-law mooring. I dissent from that determination.

## I

The Court presents three reasons in support of its conclusion that a lesser included offense instruction was properly withheld in this case under the elements-based test of *Schmuck* v. *United States*, 489 U. S. 705 (1989). First, the Court holds that bank larceny contains an "intent to steal" requirement that bank robbery lacks. *Ante*, at 267–271. Second, the Court concludes that larceny contains a requirement of carrying away, or "asportation," while robbery does not. *Ante*, at 272. And third, the Court states that the "value exceeding $1,000" requirement in the first paragraph of the larceny statute is an element for which no equivalent exists in the robbery statute. *Ante*, at 272–274. The Court's first and second points, I conclude, are mistaken. As for the third, I agree with the Court that the "value exceeding $1,000" requirement is an element essential to sustain a conviction for the higher degree of bank larceny. I would hold, however, that Carter was not disqualified on that account from obtaining the lesser included offense instruction he sought.

I note at the outset that the structure of § 2113 points strongly toward the conclusion that bank larceny is a lesser included offense of bank robbery. Section 2113(c) imposes criminal liability on any person who knowingly "receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value which has been taken or stolen from a bank . . . in violation of subsection (b)." If bank larceny, covered in § 2113(b), contains an intent or asportation element not included in bank robbery, covered in § 2113(a), then § 2113(c) creates an anomaly. As the Court concedes, *ante*, at 263–264, under today's decision the fence who gets his loot from a bank larcenist will necessarily receive property "stolen . . . in violation of subsection (b)," but the one who gets his loot from a bank robber will not. Once it is recognized that bank larceny is a lesser included offense of bank robbery, however, the anomaly vanishes. Because anyone who violates § 2113(a) necessarily commits the lesser included offense described in § 2113(b), a person who knowingly receives stolen property from a bank robber is just as guilty under § 2113(c) as one who knowingly receives stolen property from a bank larcenist.[1]

I emphasize as well that the title of § 2113 is "Bank robbery and incidental crimes." This Court has repeatedly recognized that "'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt'

---

[1] I further note, and the Court does not dispute, that under today's holding the Double Jeopardy Clause would not bar the Government from bringing a bank larceny prosecution against a defendant who has already been acquitted—or, indeed, convicted—by a jury of bank robbery on the same facts. See *Blockburger* v. *United States*, 284 U. S. 299 (1932) (Double Jeopardy Clause does not bar consecutive prosecutions for a single act if each charged offense requires proof of an element that the other does not); Tr. of Oral Arg. 46–47 (in response to Court's inquiry, counsel for the Government stated that, under the Government's construction of § 2113, if a jury acquitted a defendant on an indictment for bank robbery, it would be open to the prosecution thereafter to seek the defendant's reindictment for bank larceny).

about the meaning of a statute." *Almendarez-Torres* v. *United States*, 523 U. S. 224, 234 (1998) (quoting *Trainmen* v. *Baltimore & Ohio R. Co.*, 331 U. S. 519, 528–529 (1947)).[2] Robbery, all agree, was an offense at common law, and this Court has consistently instructed that courts should ordinarily read federal criminal laws in accordance with their common-law origins, if Congress has not directed otherwise. See *Neder* v. *United States*, 527 U. S. 1, 21 (1999) ("[W]here Congress uses terms that have accumulated settled meaning under the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." (internal quotation marks and modifications omitted)); *Evans* v. *United States*, 504 U. S. 255, 259 (1992) ("It is a familiar 'maxim that a statutory term is generally presumed to have its common-law meaning.'") (quoting *Taylor* v. *United States*, 495 U. S. 575, 592 (1990)); *United States* v. *Turley*, 352 U. S. 407, 411 (1957) ("We recognize that where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning."). As we explained in *Morissette* v. *United States*, 342 U. S. 246 (1952):

> "[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary

---

[2] The majority says that courts may use a statutory title or heading only to "shed light on some ambiguous word or phrase," but not as a guide to a statute's overall meaning. See *ante*, at 267. Our cases have never before imposed such a wooden and arbitrary limitation, and for good reason: A statute's meaning can be elusive, and its title illuminating, even where a court cannot pinpoint a discrete word or phrase as the source of the ambiguity.

278

direction may be taken as satisfaction with widely accepted definitions, not as a departure from them." *Id.*, at 263.

In interpreting § 2113, then, I am guided by the common-law understanding of "robbery and incidental crimes." At common law, as the Government concedes, robbery was an aggravated form of larceny. Specifically, the common law defined larceny as "the felonious taking, and carrying away, of the personal goods of another." 4 W. Blackstone, Commentaries on the Laws of England 230 (1769) (Blackstone) (internal quotation marks omitted). Robbery, in turn, was larceny effected by taking property from the person or presence of another by means of force or putting in fear. Brief for United States 29–30 (citing 2 W. LaFave & A. Scott, Substantive Criminal Law § 8.11, pp. 437–438 (1986) (LaFave & Scott)). Larceny was therefore a lesser included offense of robbery at common law. See 4 Blackstone 241 (robbery is "[o]pen and violent larciny from the person" (emphasis deleted)); 2 E. East, Pleas of the Crown § 124, p. 707 (1803) (robbery is a species of "aggravated larceny"); 2 W. Russell & C. Greaves, Crimes and Misdemeanors *101 ("robbery is an aggravated species of larceny").

Closer inspection of the common-law elements of both crimes confirms the relationship. The elements of common-law larceny were also elements of robbery. First and most essentially, robbery, like larceny, entailed an intentional taking. See 4 Blackstone 241 (robbery is "the felonious and forcible taking, from the person of another, of goods or money to any value, by putting him in fear"); 2 East, *supra*, at 707 (robbery is the "felonious taking of money or goods, to any value, from the person of another, or in his presence, against his will, by violence or putting him in fear"). Second, as the above quotations indicate, the taking in a robbery had to be "felonious," a common-law term of art signifying an intent to steal. See 4 Blackstone 232 ("This taking, and carrying away, must also be *felonious*; that is, done *animo*

*furandi* [with intent to steal]: or, as the civil law expresses it, *lucri causa* [for the sake of gain]."); Black's Law Dictionary 555 (5th ed. 1979) ("Felonious" is "[a] technical word of law which means done with intent to commit crime"). And third, again like larceny, robbery contained an asportation requirement. See 2 LaFave & Scott § 8.11, at 439 ("Just as larceny requires that the thief both 'take' (secure dominion over) and 'carry away' (move slightly) the property in question, so too robbery under the traditional view requires both a taking and an asportation (in the sense of at least a slight movement) of the property." (footnotes omitted)). Unlike larceny, however, robbery included one further essential component: an element of force, violence, or intimidation. See 4 Blackstone 242 ("[P]utting in fear is the criterion that distinguishes robbery from other larcinies.").[3]

Precedent thus instructs us to presume that Congress has adhered to the altogether clear common-law understanding

---

[3] English courts continue to recognize larceny as a lesser included offense of robbery. See, *e. g.*, *Regina* v. *Skivington*, 51 Crim. App. 167, 170 (C. A. 1967) ("[L]arceny is an ingredient of robbery, and if the honest belief that a man has a claim of right is a defence to larceny, then it negatives one of the ingredients in the offense of robbery . . . ."). After the enactment of the Theft Act, 1968, which consolidated the crimes of larceny, embezzlement, and fraudulent conversion into the single crime of theft, see *Director of Public Prosecutions* v. *Gomez*, 96 Crim. App. 359, 377 (H. L. 1992) (Lord Lowry, dissenting), English courts reaffirmed that theft remains a lesser included offense of robbery, see *Regina* v. *Guy*, 93 Crim. App. 108, 111 (C. A. 1991) ("[Section 8(1) of the Theft Act, 1968] makes it clear that robbery is theft with an additional ingredient, namely the use of force, or putting or seeking to put any person in fear of being subjected to force. Therefore anyone guilty of robbery must, by statutory definition, also be guilty of theft.").

Leading commentators agree that larceny is a lesser included offense of robbery. See, *e. g.*, 2 LaFave & Scott § 8.11, at 437 ("Robbery . . . may be thought of as aggravated larceny . . . ."); 3 C. Wright, Federal Practice and Procedure § 515, p. 22 (2d ed. 1982) ("Robbery necessarily includes larceny . . . .").

that larceny is a lesser included offense of robbery, unless Congress has affirmatively indicated its design, in codifying the crimes of robbery and larceny, to displace their common-law meanings and relationship.

Far from signaling an intent to depart from the common law, the codification of § 2113's predecessor statute suggests that Congress intended to adhere to the traditional ranking of larceny as a lesser included offense of robbery. There is no indication at any point during the codification of the two crimes that Congress meant to install new conceptions of larceny and robbery severed from their common-law foundations.

Prior to 1934, federal law did not criminalize bank robbery or larceny; these crimes were punishable only under state law. Congress enacted the precursor to § 2113(a) in response to an outbreak of bank robberies committed by John Dillinger and others who evaded capture by state authorities by moving from State to State. See *Jerome* v. *United States*, 318 U. S. 101, 102 (1943) (1934 Act aimed at "interstate operations by gangsters against banks—activities with which local authorities were frequently unable to cope"). In bringing federal law into this area, Congress did not aim to reshape robbery by altering the common-law definition of that crime. On the contrary, Congress chose language that practically jumped out of Blackstone's Commentaries:

> "Whoever, by force and violence, or by putting in fear, feloniously takes, or feloniously attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank shall be fined not more than $5,000 or imprisoned not more than twenty years, or both." Act of May 18, 1934, ch. 304, § 2(a), 48 Stat. 783.

It soon became apparent, however, that this legislation left a gap: It did not reach the thief who intentionally, though not violently, stole money from a bank. Within a few years, federal law enforcers endeavored to close the gap. In a letter to the Speaker of the House, the Attorney General conveyed the Executive Branch's official position: "The fact that the statute is limited to robbery and does not include larceny and burglary has led to some incongruous results." See H. R. Rep. No. 732, 75th Cong., 1st Sess., 1 (1937) (reprinting letter). In particular, the Attorney General cited the example of a thief apprehended after taking $11,000 from a bank while a teller was temporarily absent. *Id.*, at 1–2. He therefore asked Congress to amend the bank robbery statute, specifically to add a larceny provision shorn of any force, violence, or fear requirement. *Id.*, at 2. Congress responded by passing an Act "[t]o amend the bank robbery statute to include burglary and larceny." Act of Aug. 24, 1937, ch. 747, 50 Stat. 749. The Act's new larceny provision, which Congress placed in the very same section as the robbery provision, punished "whoever shall take and carry away, with intent to steal or purloin," property, money, or anything of value from a bank. *Ibid.* There is not the slightest sign that, when this new larceny provision was proposed in terms tracking the common-law formulation, the Attorney General advocated any change in the definition of robbery from larceny *plus* to something less. Nor is there any sign that Congress meant to order such a change. The Act left in place the 1934 Act's definition of bank robbery, which continued to include the word "feloniously," requiring (as the Court concedes, *ante*, at 270) proof by the Government of an intent to steal. 50 Stat. 749.

In its 1948 codification of federal crimes, Congress delineated the bank robbery and larceny provisions of §§ 2113(a) and 2113(b) and placed these provisions under the title "Bank robbery and incidental crimes." Act of June 25, 1948, § 2113,

62 Stat. 796–797. In this codification, Congress deleted the word "feloniously" from the robbery provision, leaving the statute in substantially its present form.

## II

That 1948 deletion forms the basis of the Government's prime argument against characterizing § 2113(b) as a lesser included offense of § 2113(a), namely, that robbery, unlike larceny, no longer requires a specific intent to steal. The Government concedes that to gain a conviction for robbery at common law, the prosecutor had to prove the perpetrator's intent to steal. The Government therefore acknowledges that when Congress uses the terms "rob" or "robbery" "without further elaboration," Congress intends to retain the common-law meaning of robbery. Brief for United States 16, n. 9. But the Government contends that the 1948 removal of "feloniously" from § 2113(a) showed Congress' purpose to dispense with any requirement of intent to steal.

It is true that the larceny provision contains the words "intent to steal" while the current robbery provision does not.[4] But the element-based comparison called for by *Schmuck* is not so rigid as to require that the compared statutes contain identical words. Nor does *Schmuck* counsel deviation from our traditional practice of interpreting federal criminal statutes consistently with their common-law origins in the absence of affirmative congressional indication to the contrary. Guided by the historical understanding of the relationship between robbery and larceny both at common law and as brought into the federal criminal code, I conclude that the offense of bank robbery under § 2113(a), like the offense of bank larceny under § 2113(b), has always included and continues to include a requirement of intent to steal.

---

[4] Notably, the Court would read a requirement of intent to steal into § 2113(b) even if that provision did not contain such words. *Ante*, at 269.

This traditional reading of the robbery statute makes common sense. The Government agrees that to be convicted of robbery, the defendant must resort to force and violence, or intimidation, to accomplish his purpose. But what purpose could this be other than to steal? The Government describes two scenarios in which, it maintains, a person could commit bank robbery while nonetheless lacking intent to steal. One scenario involves a terrorist who temporarily takes a bank's money or property aiming only to disrupt the bank's business; the other involves an ex-convict, unable to cope with life in a free society, who robs a bank because he wants to be apprehended and returned to prison. Brief for United States 22, n. 13.

The Government does not point to any cases involving its terrorist scenario, and I know of none. To illustrate its ex-convict scenario, the Government cites *United States* v. *Lewis*, 628 F. 2d 1276 (CA10 1980), which appears to be the only reported federal case presenting this staged situation. The facts of *Lewis*—a case on which the Court relies heavily, see *ante*, at 268, 271—were strange, to say the least. Hoping to be sent back to prison where he could receive treatment for his alcoholism and have time to pursue his writing hobby, Lewis called a local detective and informed him of his intention to rob a bank. 628 F. 2d, at 1277. He also discussed his felonious little plans with the police chief, undercover police officers, and a psychologist. *Ibid.* He even allowed his picture to be taken so that it could be posted in local banks for identification. *Ibid.* Following his much-awaited heist, Lewis was arrested in the bank's outer foyer by officers who had him under surveillance. *Id.*, at 1278.

I am not sure whether a defendant exhibiting this kind of "bizarre behavior," *ibid.*, should in fact be deemed to lack a specific intent to steal. (The Tenth Circuit, I note, determined that specific intent was present in *Lewis*, for "[t]he jury, charged with the duty to infer from conflicting evidence the defendant's intent, could have concluded that

if Lewis was not arrested he would have kept the money and spent it." *Id.*, at 1279.) But whatever its proper disposition, this sort of case is extremely rare—the Government represents that, nationwide, such indictments are brought no more than once per year. Brief for United States 22, n. 13. Moreover, unlike a John Dillinger who foils state enforcers by robbing banks in Chicago and lying low in South Bend, the thief who orchestrates his own capture at the hands of the local constable hardly poses the kind of problem that one would normally expect to trigger a federal statutory response. In sum, I resist the notion—apparently embraced by the Court, see *ante*, at 271—that Congress' purpose in deleting the word "feloniously" from § 2113(a) was to grant homesick ex-convicts like Lewis their wish to return to prison. Nor can I credit the suggestion that Congress' concern was to cover the Government's fictional terrorist, or the frustrated account holder who "withdraws" $100 by force or violence, believing the money to be rightfully his, or the thrill seeker who holds up a bank with the intent of driving around the block in a getaway car and then returning the loot, or any other defendant whose exploits are seldom encountered outside the pages of law school exams.

Indeed, there is no cause to suspect that the 1948 deletion of "feloniously" was intended to effect any substantive change at all. Nothing indicates that Congress removed that word in response to any assertion or perception of prosecutorial need. Nor is there any other reason to believe that it was Congress' design to alter the elements of the offense of robbery. Rather, the legislative history suggests that Congress intended only to make "changes in phraseology." H. R. Rep. No. 304, 80th Cong., 1st Sess., A135 (1947). See *Prince* v. *United States,* 352 U. S. 322, 326, n. 5 (1957) ("The legislative history indicates that no substantial change was made in this [1948] revision" of § 2113); *Morissette,* 342 U. S., at 269, n. 28 ("The 1948 Revision was not intended to create new crimes but to recodify

those then in existence."). As the Third Circuit has recognized, "it seems that the deletion of 'feloniously' was a result of Congress' effort to delete references to felonies and misdemeanors from the code, inasmuch as both terms were defined in 18 U. S. C. § 1," a statute that has since been repealed.[5]  *United States* v. *Mosley,* 126 F. 3d 200, 205 (CA3 1997). See also *United States* v. *Richardson,* 687 F. 2d 952, 957 (CA7 1982) (giving the same account of the 1948 revision). I would not attribute to Congress a design to create a robbery offense stripped of the requirement of larcenous intent in the absence of any affirmative indication of such a design.[6]

Our decision in *Prince* supports this conclusion. The petitioner in that case had entered a bank, displayed a revolver, and robbed the bank. He was convicted of robbery and of entering the bank with the intent to commit a felony, both crimes prohibited by § 2113(a). The trial judge sentenced him, consecutively, to 20 years for the robbery and 15 years for the entering-with-intent crime. 352 U. S., at 324. This Court reversed the sentencing decision. The entering-with-intent crime, we held, merges with the robbery crime once the latter crime is consummated. Thus, we explained, the punishment could not exceed 20 years, the sentence authorized for a consummated robbery. *Id.,* at 329. In reaching our decision in *Prince,* we noted that, when the federal bank robbery proscription was enlarged in 1937 to add the entering-with-intent and larceny provisions, "[i]t was manifestly the purpose of Congress to establish lesser offenses."

---

[5] The various classes of federal felonies and misdemeanors are now defined at 18 U. S. C. § 3559.

[6] Congress could have provided such an affirmative indication in any number of ways. The simplest would have been to say so in the statute, *e. g.:* "It shall not be a defense that the accused person lacked an intent to steal." Cf. 18 U. S. C. § 645 (criminalizing embezzlement by judicial officers, and providing that "[i]t shall not be a defense that the accused person had any interest in [the embezzled] moneys or fund").

*Id.*, at 327. We further stated that the "heart of the [entering] crime is the intent to steal," and that "[t]his mental element merges into the completed crime if the robbery is consummated." *Id.*, at 328. *Prince* thus conveys the Court's comprehension that an intent to steal is central not only to the entry and larceny crimes, but to robbery as well.

*United States* v. *Wells*, 519 U. S. 482 (1997), relied on by the Court, *ante*, at 265, is not in point. In that case, we held that the offense of making a false statement to a federally insured bank, 18 U. S. C. § 1014, did not include a requirement of materiality. We reached that holding only after concluding that the defendants in that case had not "come close to showing that at common law the term 'false statement' acquired any implication of materiality that came with it into § 1014." 519 U. S., at 491. Indeed, the defendants made "no claims about the settled meaning of 'false statement' at common law." *Ibid.* Moreover, we held that "Congress did not codify the crime of perjury or comparable common-law crimes in § 1014; . . . it simply consolidated 13 statutory provisions relating to financial institutions" to create a single regulatory offense. *Ibid.* Three of those 13 provisions, we observed, had contained express materiality requirements and lost them in the course of consolidation. *Id.*, at 492–493. From this fact, we inferred that "Congress deliberately dropped the term 'materiality' without intending materiality to be an element of § 1014." *Id.*, at 493. Here, by contrast, it is clear that Congress' aim was to codify the common-law offenses of bank robbery and bank larceny; that intent to steal was an element of common-law robbery brought into § 2113(a) via the word "feloniously"; and that Congress' deletion of that word was not intended to have any substantive effect, much less to dispense with the requirement of intent to steal.

Having accepted the Government's argument concerning intent to steal, the Court goes on to agree with the Government that robbery, unlike larceny, does not require that

the defendant carry away the property. As with intent to steal, the historical linkage of the two crimes reveals the Court's error. It is true that § 2113(b) includes the phrase "takes and carries away" while § 2113(a) says only "takes." Both crimes, however, included an asportation requirement at common law. See *supra,* at 279. Indeed, the text of §§ 2113(a) and (b)—which the Court maintains must be the primary focus of lesser included offense analysis—mirrors the language of the common law quite precisely. At common law, larceny was typically described as a crime involving both a "taking" and a *"carrying away."* See 4 Blackstone 231 (helpfully reminding us that *"cepit et asportavit* was the old law-latin"). Robbery, on the other hand, was often defined in "somewhat undetailed language," LaFave & Scott § 8.11, at 438, n. 6, that made no mention of "carrying away," see 4 Blackstone 231, but was nevertheless consistently interpreted to encompass an element of asportation. The Court overlooks completely this feature of the common-law terminology. I note, moreover, that the asportation requirement, both at common law and under § 2113, is an extremely modest one: even a slight movement will do. See LaFave & Scott § 8.11, at 439; 2 Russell & Greaves, Crimes and Misdemeanors, at *152–*153. The text of §§ 2113(a) and (b) thus tracks the common law. The Court's conclusory statement notwithstanding, nothing in the evolution of the statute suggests that "Congress adopted a different view in § 2113(a)," *ante,* at 272, deliberately doing away with the minimal asportation requirement in prosecutions for bank robbery. I would hold, therefore, that both crimes continue to contain an asportation requirement.

Finally, the Court concludes that the "value exceeding $1,000" requirement of the first paragraph of § 2113(b) is an element of the offense described in that paragraph. I agree with this conclusion and with the reasoning in support of it. See *ante,* at 273. It bears emphasis, however, that the lesser degree of bank larceny defined in § 2113(b)'s second para-

graph contains no dollar value element even arguably impeding its classification as a lesser included offense of bank robbery. The Government does not contend that the "value not exceeding $1,000" component of that paragraph is an element of the misdemeanor offense, and such a contention would make scant sense. Surely Congress did not intend that a defendant charged only with the lower grade of bank larceny could successfully defend against that charge by showing that he stole *more* than $1,000. In other words, if a defendant commits larceny without exhibiting the distinguishing characteristics of robbery (force and violence, or intimidation), he has necessarily committed at least the lesser degree of larceny, whether he has taken $500 or $5,000. Under *Schmuck*, then, a defendant charged with bank robbery in violation of § 2113(a) is not barred as a matter of law from obtaining a jury instruction on bank larceny as defined in the second paragraph of § 2113(b).

I see no reason why a defendant charged with bank robbery, which securely encompasses as a lesser included offense the statutory equivalent of petit larceny, should automatically be denied an instruction on the statutory equivalent of grand larceny if he wants one. It is clear that petit and grand larceny were two grades of the same offense at common law. See 4 Blackstone 229 (petit and grand larceny are "considerably distinguished in their punishment, but not otherwise"). And, as earlier explained, *supra*, at 278–279, robbery at common law was an aggravated form of that single offense. One of the key purposes of *Schmuck*'s elements test is to allow easy comparison between two discrete crimes. See 489 U. S., at 720–721. That purpose would be frustrated if an element that exists only to distinguish a more culpable from a less culpable grade of the same crime were sufficient to prevent the defendant from getting a lesser included offense instruction as to the more culpable grade. I would therefore hold that a defendant charged with the felony of bank robbery is not barred as a matter of

law from requesting and receiving an instruction describing as a lesser included offense the felony grade of bank larceny.[7]

To be sure, any request by the defendant for an instruction covering the higher grade of bank larceny would be tantamount to a waiver of his right to notice by indictment of the "value exceeding $1,000" element. See *Stirone* v. *United States*, 361 U. S. 212, 215 (1960) (Fifth Amendment requires the Government to get a grand jury indictment before it may prosecute any felony). The constitutional requirement of notice would likely prevent the prosecution from obtaining the same instruction without the defendant's consent. I would limit any such asymmetry, however, to the unusual circumstance presented here, where an element serves only to distinguish a more culpable from a less culpable grade of the very same common-law crime and where the less culpable grade is, in turn, a lesser included offense of the crime charged.

\* \* \*

In sum, I would hold that a defendant charged with bank robbery as defined in 18 U. S. C. § 2113(a) is not barred as a matter of law from obtaining a jury instruction on bank larceny as defined in 18 U. S. C. § 2113(b). In reaching the opposite conclusion, the Court gives short shrift to the common-law origin and statutory evolution of § 2113. The Court's woodenly literal construction gives rise to practical anomalies, see *supra*, at 276, and n. 1, and effectively shrinks the jury's choices while enlarging the prosecutor's options. I dissent.

---

[7] The court could instruct the jury as to the common elements of both grades of bank larceny, and then add that in order to return a conviction of the higher grade, the jury must also find that the value of the stolen property exceeded $1,000. See Tr. of Oral Arg. 35; 3 L. Sand, J. Siffert, W. Loughlin, & S. Reiss, Modern Federal Jury Instructions ¶ 53.03, p. 53–55 (1999) ("The issue of valuation should be considered by the jury only after they have determined that the defendant is guilty of some type of bank larceny within the meaning of section 2113(b).").