**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-50152 |
| Plaintiff - Appellee, | D.C. No. 8:09-cr-00180-AHM-1 |
| v. | |
| EDWARD LANTZ FERGUSON, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
A. Howard Matz, District Judge, Presiding

Argued and Submitted August 7, 2014
Pasadena, California

Before: WARDLAW, CALLAHAN, and M. SMITH, Circuit Judges.

**I.**

Edward Ferguson ("Ferguson") challenges his conviction for two counts of

mail fraud in violation of 18 U.S.C. § 1341, alleging insufficiency of evidence.  He

argues that the mailings that formed the basis of his conviction were (1) sent after

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

he had received victim-investors' funds and thus were not part of an ongoing scheme, and (2) do not qualify as "lulling" letters because they caused panic.

We affirm because, taking the evidence presented at trial in the light most favorable to the government, *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010), a rational trier of fact could have found that the letters in question were "lulling" letters, or that they were part of an ongoing scheme, or both.[1] *See United States v. Manarite*, 44 F.3d 1407, 1411-12 (9th Cir. 1995).

## II.

To secure a conviction for mail fraud, the government must prove that the defendant: (1) devised or intended to devise a scheme to defraud or to perform specified fraudulent acts; and (2) used the mail "for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." *United States v. Phillips*, 704 F.3d 754, 762 (9th Cir. 2012) (quoting *Carter v. United States*, 530 U.S. 255, 261 (2000)). Circumstantial evidence may be a sufficient basis for proving specific intent to defraud at the time of the mailings. *See United States v. Sullivan*, 522 F.3d 967, 975 (9th Cir. 2008). The Supreme Court has held that letters mailed after receipt of money by defrauders may be in furtherance of the

---

[1] Because the parties are familiar with the facts and procedural history, we recite them here only to the extent necessary to explain our decision.

fraudulent scheme in two instances: a "lulling scheme" and an "ongoing scheme."

*Manarite*, 44 F.3d at 1412.

    **A. Lulling.** In a lulling scheme,

> subsequent mailings are "designed to lull the victims into a false sense of
> security, postpone their ultimate complaint to the authorities, and therefore
> make the apprehension of the defendants less likely." "In such a scheme, the
> mailing reassures the victim that all is well, discouraging him from
> investigating and uncovering the fraud."

*Id.* (internal citations omitted); *see also United States v. Jones*, 712 F.2d 1316, 1321 (9th Cir. 1983) (same).

    Viewed in the light most favorable to the prosecution, *Phillips*, 704 F.3d at 757, a rational juror could have concluded, based on the evidence presented at trial, that the letters were lulling letters because they were intended to reassure victims that neither their principal nor their previously accrued interest earnings were in jeopardy.

    It is irrelevant, despite what Ferguson suggests, that rather than calming investors the letters caused distress; what is relevant is Ferguson's intent. *See Schmuck v. United States*, 489 U.S. 705, 715 (1989); *see also United States v. Rude*, 88 F.3d 1538, 1547 (9th Cir. 1996) ("the mail and wire fraud statutes do not proscribe only *successful* schemes." (emphasis in original)). A rational juror could have easily concluded that while it may have been the November letter that first

3

alerted some investors to the "freezing" of their assets, Ferguson's investors would inevitably have panicked when their "interest" payments ceased and they learned that they could not withdraw their principal. In short, the letters were intended to quell inevitable disgruntlement, and to stop investors from going to authorities – a goal they achieved for a time. Accordingly, the letters fit neatly into the definition of "lulling letters" as laid out by *Schmuck*, *Manarite* and *Jones*, *supra*.

**B. Ongoing scheme.** In addition to an intent to lull and avoid or delay detection, a rational juror could have concluded that the letters were part of an ongoing scheme, and that Ferguson intended to solicit more funds. The letters encouraged investors to invest more money in funds that would be made available in the future. *See Manarite*, 44 F.3d at 1413 (mailings may also be part of an ongoing scheme where the fraudster was attempting to facilitate additional transactions).

The evidence demonstrates that Ferguson's scheme was not planned with a fixed start and end point. As we have previously explained:

> [a]llowance must be made for the reality that embezzlements and other schemes to defraud are often open-ended, opportunistic enterprises. They may evolve over time, contemplate no fixed end date or adapt to changed circumstances. . . . [I]t would be overly restrictive to look only at the scope of the plan as it was *originally* conceived.

4

*United States v. Tanke*, 743 F.3d 1296, 1305 (9th Cir. 2014).  Here, it was reasonable for jurors to see the letters as part of Ferguson's evolving plan.

**AFFIRMED**.