**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**David HARGROVE,
Defendant–Appellant.**

**No. 90–1550.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1990.

Decided April 5, 1991.

---

Hilary W. Frooman, Asst. U.S. Atty., Office of the U.S. Atty., Springfield, Ill., for U.S.

David Hargrove, Deerfield Beach, Fla., pro se.

Geoffrey C. Fleck, Friend & Fleck, South Miami, Fla., for defendant-appellant.

Before CUMMINGS, CUDAHY, and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

A jury convicted David Hargrove of one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. The district court sentenced Hargrove to 150 months imprisonment pursuant to the Sentencing Guidelines. Hargrove appeals his conviction and sentence. We affirm.

## I.

On March 9, 1989, a grand jury returned a four-count indictment against Hargrove. Six months later, on September 6, 1989, the grand jury issued a superceding indictment reflecting no change in the substantive counts. Count I of the indictment charged a conspiracy which lasted from July 1987 to July 1988 to distribute 5 or more kilograms of cocaine under sections 841(a)(1) and (b)(1)(A)(ii). Counts II, III and IV each charged Hargrove with a specific instance of cocaine distribution in excess of 500 grams under sections 841(a)(1) and (b)(1)(B)(ii). The government subsequently dismissed counts II, III, and IV.

On October 31, 1987, the case went to trial on the conspiracy count. At trial the government used as its chief witness Ronald Beckett, one of Hargrove's co-conspirators, who pled guilty to conspiracy and distribution of cocaine pursuant to a plea agreement. Beckett testified that he came from Deerfield, Florida, and attended Illinois State University in Bloomington–Normal on a football scholarship. He left school after two years and started to deal in marijuana and cocaine. He obtained the drugs in South Florida and distributed them at his former school with the help of his fellow team members.

Ronald Beckett testified that he first contacted Hargrove about getting cocaine in June 1987. He knew that Hargrove had a construction business in Deerfield, but heard that Hargrove was dealing in cocaine. Hargrove told Ronald that he would see what he could do and gave Ronald a beeper number so that he could be reached.

In July 1987 Ronald Beckett paged Hargrove on Hargrove's beeper at number (305)–482–9575, and set up a meeting at an Amoco gas station in Delray Beach, Florida. There a young woman whom Ronald did not know handed him a bag containing a kilogram of cocaine. Ronald gave the woman $15,000 for the bag, and distributed

one-half of the cocaine to his younger brother, Michael Beckett, and his friend, Brian Hines, to sell in Illinois, and the other half to a Tim King.

In August 1987 Ronald Beckett paged Hargrove and set up another meeting in Florida. An unknown woman, different from the one before, delivered a kilogram of cocaine to Ronald for $15,000. Ronald gave one-half of the cocaine to Hines and the other half to King for distribution in Illinois.

A second time in August 1987 Ronald Beckett paged Hargrove, set up a buy in Florida, and received a kilogram of cocaine from a man whom he did not know. Ronald delivered the kilogram to Hines who transported it by plane to Chicago and Bloomington, Illinois for distribution.

On a fourth occasion, in September 1987, Ronald again called Hargrove and arranged to purchase a kilogram of cocaine in Florida. Another unknown woman delivered the cocaine to him. Ronald used Lisa Andrews, the half-sister of his friend, Sherry Strong, to transport the cocaine from Florida to Chicago, Illinois.

Ronald Beckett recounted one more transaction with Hargrove in October 1987 when he discussed his need for yet another kilogram of cocaine. Ronald met Hargrove in Florida and gave him the $15,000. Later the same day an unidentified courier delivered the cocaine to Ronald who in turn transferred it to King for distribution.

In all Ronald Beckett described five separate cocaine transactions with Hargrove between July and November 1987. In December 1987 Ronald was arrested on federal drug charges.

Sherry Strong, Ronald Beckett's friend, also testified on behalf of the government pursuant to a plea of guilty to distribution of cocaine. Strong testified that in the early part of 1987, she met Hargrove, socially, through Ronald Beckett; that Ronald frequently paged Hargrove from her apartment; and that she gave (and took)

messages for Ronald, including one that "he wanted 18 pairs of pants or 18 pieces of chicken, one of the two." [1] Strong also testified that over the Summer of 1987, she transported a large sum of money for Ronald from Florida to Illinois.

Strong testified that on New Years 1987, Ronald's friend, Ed Thomas, asked her to get him some cocaine. Pursuant to this request, Strong went to Hargrove's home, left Thomas's money with Hargrove, and arranged to return for the cocaine. Upon her return she saw a packet lying on Hargrove's bed which she "guessed" was cocaine. Hargrove, wearing rubber gloves, wrapped the packet in plastic and placed it into Strong's purse. Strong mailed her purse containing the cocaine to Thomas in Chicago.

Strong testified that in March or April 1988, she again contacted Hargrove for cocaine, this time on behalf of Michael Beckett. Michael travelled from Bloomington to Strong's Fort Lauderdale, Florida apartment where he asked her to get him cocaine. Strong paged Hargrove and arranged to meet him at a Kentucky Fried Chicken in Pompano Beach, Florida. She told Hargrove that Michael Beckett was the person who wanted the cocaine. After the meeting Strong put Michael in contact with Hargrove and had no further cocaine deals with Hargrove. She maintained that throughout her involvement, she deliberately avoided seeing cocaine. She thought that if she did not see it, she would not get in trouble.

Michael Beckett, Ronald Beckett's younger brother, pled guilty to conspiracy and distribution of cocaine and testified for the government as well. Michael Beckett testified about a trip to Florida in July 1987, where he picked up his brother, Ronald, in Gainesville and drove some 350 miles with him to South Florida. On the return trip the Georgia police stopped Michael's car, discovered half a kilogram of cocaine, and arrested him along with two companions.

---

**1.** Cryptic terms such as "chicken" or "pants" are often used as code words for drugs by conversing conspirators in the hope of avoiding detection. *See United States v. Vega,* 860 F.2d 779, 795–800 (7th Cir.1988).

In the course of his other testimony Michael Beckett admitted his involvement in the trafficking of cocaine from Florida to Illinois and to his acquaintance with Hargrove, but repudiated his prior statement to police that Hargrove was the source of his cocaine. He asserted that he obtained cocaine from a "Rufus" and a Dick McEntire who was no longer alive. He said that he did not tell investigators about either man because he never had the chance to do so, and because he felt coerced to name Hargrove.

FBI agent David Riser testified for the government concerning two interviews of Michael Beckett that he conducted. Agent Riser's testimony was that at the second interview, which lasted about two hours, Michael identified Hargrove as the source of the cocaine he obtained in July 1987; further, that Michael explained that he did not identify Hargrove earlier because he wanted to protect Sherry Strong in hopes of limiting his own involvement. Agent Riser closed the interview by cautioning Michael to tell him the truth.

Connie Baker, a paralegal with the United States Attorney's Office, was present when Agent Riser interviewed Michael Beckett. She testified that the atmosphere of the interviews was very casual, and that Michael had plenty of time to say what he wanted to say. She also testified that the only time that Michael spoke of either Rufus or McEntire was in relation to marijuana, not cocaine, and Michael never stated that he made things up about Hargrove.

Vera Hendrix, an acquaintance of Hargrove, provided the testimony concerning the pager Hargrove used. Hendrix stated that her husband had asked her on previous occasions to rent pagers for him and Hargrove, and that she had contracted with a firm called Contact Gabriel for two pagers, one with the number (305)–482–9575. The government introduced records of telephone calls made to this number from the number of Sherry Strong and others in Gainesville and Lauderdale Lakes, Florida.

Deerfield Beach Police Officer Ralph Hernandez was the officer who arrested Hargrove on May 12, 1989. He testified that while he waited for telephone verification of the warrant for Hargrove's arrest, he saw Hargrove hand a set of keys to a male companion. Hargrove denied that the keys belonged to him or that he had a vehicle in the area. When Officer Hernandez noted that the keys matched a pick-up truck across the street, Hargrove admitted that the truck was his and gave Officer Hernandez permission to search it. In the course of his search Officer Hernandez found several pagers and $8,576 in cash wrapped in rubber bands. He summoned a drug dog who reacted to two separate areas in the truck, but no drugs were found.

Following Hargrove's arrest two agents from the Drug Enforcement Agency (DEA), Timothy Kuca and Restituto Loran, transported him to Fort Lauderdale for processing. The agents testified that after they advised Hargrove of the Miranda rights, they asked him if he ever was involved with cocaine. Hargrove responded that he had been a cocaine user since 1980, that he had used cocaine the night before his arrest, and that the drug dog probably alerted to the truck because he had spilled some cocaine on the seat. Hargrove's response showed a guilty conscience because the DEA agents never even told Hargove that a dog was at the scene.

Lewis Beckett, the father of Ronald and Michael Beckett, was the sole witness to testify for the defense. Mr. Beckett, Sr. testified to the substance of a telephone call that he received from Ronald when Ronald was in custody. According to Lewis Beckett, Ronald said that he "definitely didn't" get drugs from Hargrove, but that he was being pressured to say that he did. Lewis Beckett also spoke to Sherry Strong, who told him that "she was tired of ... making the trip [to Illinois] so she went and told the people what they wanted to hear," and to Michael, who said that he was being pressured to go along with Sherry Strong.

On cross-examination Lewis Beckett admitted that he learned from an anonymous phone call that Ronald gave information against Hargrove; that the caller stated that if anything happened to Hargrove, Hargrove's son would be upset; and that

he knew that Hargrove's son had a homicide conviction (later reversed). In spite of these admissions, Lewis Beckett insisted that he did not perceive the anonymous phone call as a threat.

In rebuttal the government recalled Ronald Beckett to the stand. Ronald stated that his fiancee called him while he was in custody, and that she stated that his father had asked her to help him get in touch with Ronald. When Ronald talked to his father, his father said that "he had been threatened and that the word was if I cause Dave Hargrove to go down, he or one of my family members would be taken away." Ronald did not tell his father anything about statements he made regarding Hargrove. Nor did Ronald state that he lied to the government or that he had been pressured. The threatening phone call demonstrated Hargrove's consciousness of guilt as well as his continuing involvement in the drug conspiracy with which he was charged.

On November 2, 1989, the jury found Hargrove guilty on count I of conspiracy to distribute cocaine. Hargrove moved for a new trial, but the district court denied the motion.

On March 5, 1990, the district court entered its judgement of guilty and sentenced Hargrove to 150 months imprisonment, a $25,000 fine, and a $50 special assessment. Hargrove appealed.

## II.

Hargrove raises two challenges to his conviction. His first argument is that the district court erred by admitting evidence of the circumstances surrounding his arrest on May 12, 1989. In particular, Hargrove argues that it was prejudicial error to allow Officer Hernandez and Agents Kuca and Loran to testify that a drug dog alerted positively to his truck, that a large sum of cash, pagers and other items were found in the truck, and that he admitted he was a cocaine user and had used cocaine the night before his arrest. He argues further that the evidence of the circumstances surrounding his arrest occurred more than ten months after the latest date

alleged in the conspiracy charge, and therefore was inadmissible under Fed.R.Evid. 403 and 404(b).

■ Evidence of other acts which are "intricately related to the facts of the case" is admissible without reference to Rule 404(b), provided that it passes the balancing test under Rule 403. *See United States v. Hawkins*, 823 F.2d 1020, 1023 (7th Cir.1987) (quoting *United States v. Hattaway*, 740 F.2d 1419, 1425 (7th Cir.), *cert. denied*, 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984)). Rule 403 permits the exclusion of relevant evidence when that evidence's prejudicial impact substantially outweighs its probative value. Here the testimony of Hargrove's arrest was intricately related to the facts of the case. It related directly to Hargrove's participation in the charged conspiracy and was consistent with other evidence adduced at trial. Any prejudice from this testimony resulted solely from its tendency to link Hargrove to the conspiracy and was not unfair. *See United States v. Nolan*, 910 F.2d 1553, 1558–59 (7th Cir.1990). We thus conclude that the district court did not abuse its discretion when admitting the testimony of Hargrove's prior arrest into evidence. But even if its admission was an error, the error was harmless in view of the overwhelming evidence of Hargrove's guilt. *See United States v. Farmer*, 924 F.2d 647, 654 (7th Cir.1991).

■ Hargrove's second argument is that the district court erred in allowing the testimony of Connie Baker, who was present in the courtroom during Michael Beckett's testimony, in direct violation of the sequestration order entered pursuant to Fed.R.Evid. 615. The purpose of Rule 615 is to prevent witnesses from tailoring their testimony to that which has already been presented and to help in detecting testimony that is less than candid. *See Geders v. United States*, 425 U.S. 80, 87, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976). The testimony of Baker did not contravene this purpose. Baker was a surprise witness whom the government did not intend to call until Michael Beckett testified that

the police pressured him to falsely identify Hargrove as his source for cocaine. The government called Baker solely to testify to the lack of police coercion and not to the substance of what Michael Beckett had said about Hargrove. Her testimony was in rebuttal to, and not in conformance with, Michael Beckett's testimony. Accordingly, its allowance was not an abuse of discretion.

To the extent that Hargrove contends that the district court's errors implicated his due process rights, he fails to support his contention with any argument or case citations, and therefore waives it on appeal. *See Zalega v. INS*, 916 F.2d 1257, 1258 n. 1 (7th Cir.1990).

AFFIRMED.