In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2003

United States of America,

Plaintiff-Appellee,

v.

Garland Lightfoot, Jr.,

Defendant-Appellant.


Appeal from the United States District Court
for the Western District of Wisconsin.
No. 98-CR-113-C-01--Barbara B. Crabb, Judge.


Argued February 8, 2000--Decided August 9, 2000


   Before Cudahy, Manion, and Diane P. Wood, Circuit
Judges.

   Diane P. Wood, Circuit Judge.  Garland Lightfoot
was convicted by a jury of possession with intent
to distribute cocaine and cocaine base, in
violation of 21 U.S.C. sec. 841(a)(1). He
received a stiff sentence for his crime--315
months' imprisonment--but his appeal concerns
three evidentiary rulings made by the district
court during the course of the trial. Some of the
evidence in question was indeed graphic, but we
conclude that the district court did not abuse
its discretion in any of the rulings he
challenges, and we therefore affirm.

I

   The crime itself requires no further
explanation. The way the police learned about it,
however, is important. On October 30, 1998,
Detective Dennis Gerfen of the Madison,
Wisconsin, Police Department received a 911 call.
The caller turned out to be Antoinette Eleby, and
Eleby wanted to tell Gerfen about her roommate's
drug dealings. The roommate was, not
surprisingly, Lightfoot. Eleby told Gerfen that
Lightfoot had a large quantity of cocaine and a
gun with him inside their apartment. She also
told him that Lightfoot was asleep right then,
and that if Gerfen came over he could seize the

drugs and the gun.

Gerfen, along with some other officer, promptly went to the apartment and knocked on the door. A female voice inside said "I didn't call." After a moment, Eleby opened the door and identified herself to the officers. They saw, in addition to her, two small children, a woman in the dining room, and Lightfoot. Eleby confirmed that she had placed the earlier 911 call, and she consented to a search of the apartment.

The search produced exactly the results Eleby had predicted: the officers found 136 grams of powder cocaine, 155 grams of crack cocaine, and a .380 semi-automatic handgun and ammunition for the gun. Lightfoot's fingerprints were on the bags containing the drugs, on various dishes used to process the drugs, and on the gun.

At the trial, Lightfoot attempted to defend himself by alleging that he was set up by Eleby, who was the real drug dealer. The prosecutors countered his version in several ways: with the officers' testimony, with Eleby's testimony, with the fingerprint evidence, and with evidence that Lightfoot had physically abused Eleby. The last evidence is the focus of Lightfoot's first challenge to the district court's rulings: given the nature of the evidence of abuse, which we describe briefly below, he claims that it failed to meet the relevance standards of Fed. R. Evid. 404(b) and that it served only to suggest that he was a bad man; in the alternative, he argues that it was so prejudicial that the court should have excluded it under Fed. R. Evid. 403. The second evidentiary ruling Lightfoot attacks concerned the court's decision to preclude Lightfoot from asking Eleby certain questions about her own drug dealings, from asking a detective about names in Eleby's address book, and asking his own witnesses about their prior drug dealings with Eleby. The district court excluded all three types of evidence as cumulative. Finally, Lightfoot objects to the court's decision to permit Detective Gerfen to testify as an expert that the amount of cocaine they retrieved was so great that it had to be destined for resale.
II

The district court denied Lightfoot's motion in limine to exclude evidence of his abusive behavior toward Eleby. The jury was therefore permitted to hear her testify that Lightfoot beat her when she called the police; that he regularly beat her (once a day, she estimated); that he struck her not only with his fists but also occasionally with objects like a hanger, a belt, or a bat; that he threatened to kill her if she called the police; and that when he suspected she

was trying to contact the police, he urinated all over her, including in her mouth.

We have no doubt that the jury was revolted by this account, but that does not necessarily make the evidence inadmissible. The government offered two grounds for its admissibility: first, it argued that this evidence was necessary for the jury to have the full picture of what was going on, and thus it was not 404(b) evidence at all, see United States v. Gibson, 170 F.3d 673, 678-79 (7th Cir. 1999), and second, it argued that this evidence was relevant because it tended to refute Lightfoot's argument that Eleby was the real drug dealer and he was just an innocent pawn at best. We find the latter ground persuasive. If the jury believed Eleby's account of the way Lightfoot behaved toward her (as it ultimately did), this would have been strong circumstantial evidence that Lightfoot was the one in control, not Eleby.

Even relevant evidence may be excluded under Rule 403 if the prejudicial effect of the evidence outweighs the benefit the jury would obtain from considering it. But balancing under Rule 403 is the quintessential job for the trial judge, who is in a far better position to weigh the advantages and disadvantages of admitting particular evidence. Here, despite the obviously prejudicial effect of Eleby's testimony, we cannot find that Judge Crabb abused her discretion. Indeed, it was important for the jury to have some way of assessing Lightfoot's defense, and this evidence helped it to do so.

We similarly find no merit in Lightfoot's complaints about the various limits the district court placed on his cross-examination of Eleby. Lightfoot wanted to explore her drug dealing boyfriend by boyfriend, location by location, and the district court properly found that this was not necessary. Lightfoot was able to bring out the key point, which was that Eleby had dealt drugs before. The district court has broad discretion to impose reasonable limits on both scope and extent of cross-examination, see United States v. Span, 170 F.3d 798, 802-03 (7th Cir. 1999), and it did not exceed them in this instance. We reject Lightfoot's challenge to the limits the court placed on his questioning of his own witnesses (whom he wanted to ask about prior drug purchases from Eleby, or if they knew Eleby) for the same reason.

Last, Lightfoot claims that the court should not have permitted Detective Gerfen (who was also a fact witness) to testify in an expert capacity about the quantity of drugs the officers recovered and the fact that this was a commercial

quantity, not a personal use amount. Gerfen had nearly 25 years' general experience as a police officer, 8 years' experience investigating narcotics, and he had received training from the Wisconsin Division of Narcotics Enforcement. As it is clear that there is nothing wrong with having a police officer testify both as a fact witness and an expert witness, see United States v. Penny, 60 F.3d 1257, 1265 (7th Cir. 1995), Lightfoot is reduced to claiming that Gerfen's testimony should have been excluded because he admitted that he was unfamiliar with the odor of crack cocaine during the cooking process. That admission, however, has no bearing on Gerfen's general familiarity with the cocaine business. He was amply qualified to testify as an expert, and Lightfoot was free to impeach him with details like the odor evidence. It was up to the jury to assess the weight of his testimony.

III

We Affirm the judgment of the district court.