In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3558

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WENDELL JOHNSON,

*Defendant-Appellant.*

————————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:09 CR 30025 WDS—**William D. Stiehl**, *Judge.*

————————

ARGUED APRIL 23, 2010—DECIDED OCTOBER 26, 2010

————————

Before MANION, ROVNER, *Circuit Judges*, and HIBBLER, *District Judge.*[†]

HIBBLER, *District Judge*. This is an appeal from a judgment and sentence entered by the district court. After a two-day trial, a jury found Defendant-Appellant Wendell Johnson guilty of two counts of distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Thereafter, the district court calculated the proper sentencing

————————

[†] Of the Northern District of Illinois, sitting by designation.

range under the United States Sentencing Guidelines to be 262 to 327 months of incarceration and sentenced him to 300 months in prison. Johnson first challenges his conviction on the ground that four types of evidence that the court admitted during his trial were unfairly prejudicial. Second, although he does not dispute the court's calculation of the applicable Guidelines range, he contends that the court abused its discretion when it declined to sentence him to a term of incarceration substantially shorter than the minimum suggested by the Guidelines. We affirm.

## I. Background

At trial, the Government relied primarily on evidence presented by a confidential informant and two police officers regarding two "controlled buys" of crack cocaine conducted by the informant. The police officers testified that on two separate occasions in February 2009 the informant called Johnson in order to schedule meetings with him. The Government introduced recordings of those telephone conversations, which contained what they contended were coded plans for the informant to purchase crack cocaine from Johnson.

The officers testified that prior to the meetings, they strip-searched the informant to confirm that he was not in possession of any drugs. They outfitted him with concealed audio and video recording devices and provided him with money to pay for the crack cocaine he was to purchase from Johnson. Then they monitored the informant as he met with Johnson and, after taking him back to the police station, performed another strip-search. According to the officers, on both occasions, the informant returned from his

meetings with Johnson in possession of crack cocaine and without the money. The officers' testimony corroborated the informant's testimony that on both occasions he arranged meetings with Johnson in order to purchase crack cocaine and then successfully purchased the substance from Johnson using the money provided by the police officers.

The Government also introduced the audiovisual recordings obtained during those meetings through the police officers. The recordings contained footage of Johnson meeting with the informant, as well as footage of crack cocaine in the informant's hand.

Finally, the Government examined Johnson's brother, who testified that he also sold crack cocaine to the informant and that he introduced the informant to Johnson and referred him to Johnson for the purpose of buying crack cocaine.

Johnson's defense focused primarily on two main issues. First and foremost, he relied heavily on the fact that the video recordings did not show an actual exchange of money or drugs between Johnson and the informant. He pointed out that while Johnson and the informant did not explicitly mention drugs in their vague conversations, they definitely did discuss guns. Thus, Johnson argued, the meetings concerned the informant's attempts to sell guns to Johnson rather than Johnson's sale of drugs to the informant. Johnson's second strategy was to call into question the credibility of the informant and his brother by focusing on their ulterior motives in testifying against him. Johnson noted that the informant, an admitted crack addict, received compensation for his cooperation in the

investigation. Similarly, Johnson argued that his brother, who was facing a long prison sentence for his own drug conviction, also had a motive to cooperate with the Government.

Johnson bases the appeal of his conviction on a few additional pieces of evidence the Government introduced that relate more to surrounding circumstances than the narrative of the crimes charged. First, Johnson argues that the district court should have excluded his 2007 conviction for distributing cocaine. The court took judicial notice of that conviction over Johnson's pre-trial objection.[1] Second, the Government also elicited testimony through the police officers, the informant, and Johnson's brother that Johnson had previously engaged in at least fifteen prior crack cocaine transactions with the informant and at least one with his brother. Third, the district court allowed the Government to play recordings of telephone conversations Johnson had with an associate while in jail awaiting trial, which the Government claimed contained Johnson's coded instructions to threaten the informant prior to trial. Johnson argues that the district court should not have allowed the Government to publish the recordings to the jury, but that at the very least the court should have required the Government to redact the recordings or provided a limiting instruction to the jury regarding their use. Fourth, and finally, the Government elicited testimony from one of the

---

[1] Johnson also argues that the district court erred by failing to give a cautionary instruction regarding the use of his 2007 conviction. However, Johnson is mistaken; the district court gave such an instruction.

police officers indicating that Johnson had prior contact with law enforcement.

As noted above, Johnson also challenges the district court's decision to impose a sentence of 300 months of incarceration. He argues that the district court should have granted his motion for a downward departure from the guideline range based on his troubled childhood and his resulting struggles with substance abuse and psychological disorders.

## II. Discussion

### A. Standard of review

#### 1. Evidentiary rulings

Johnson preserved his objections to the admission of the jail telephone call recordings and his 2007 conviction by raising them before the district court. Thus, we review the district court's decision to admit that evidence for an abuse of discretion. *United States v. Cunningham*, 462 F.3d 708, 712 (7th Cir. 2006). In other words, an admission is only improper under this standard "when no reasonable person could take the view adopted by the trial court." *United States v. Ozuna*, 561 F.3d 728, 738 (7th Cir. 2009) (internal quotation omitted). We will reverse and order a new trial only if we find that an improper admission was not harmless, "which is to say only if the error had a substantial influence over the jury, and the result reached was inconsistent with substantial justice." *United States v. Owens*, 424 F.3d 649, 653 (7th Cir. 2005) (internal quotation omitted).

Because Johnson did not object to the admission of the evidence that he had previously sold drugs to the informant or the evidence of his prior law enforcement contact at trial, we review the district court's decision to admit that evidence for plain error. Fed. R. Crim. P. 52(b); *United States v. Sebolt*, 460 F.3d 910, 916 (7th Cir. 2006). Johnson can prevail under this standard only if he shows that "(1) an error occurred; (2) the error was 'plain,' that is, it was clear or obvious; and (3) the error affected the outcome of the district court proceedings." *United States v. Shearer*, 379 F.3d 453, 456 (7th Cir. 2004) (citing *United States v. Olano*, 507 U.S. 725, 731-35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). We will reverse the decision of the district court" only if the errors resulted in an actual miscarriage of justice such that the defendant probably would have been acquitted but for the erroneously admitted evidence." *United States v. Avila*, 557 F.3d 809, 820 (7th Cir. 2009) (internal quotations omitted).

2.   Sentencing

The district court imposed a sentence that falls within the range suggested by the United States Sentencing Guidelines. Thus, we must presume that it was reasonable. *United States v. Panaigua-Verdugo*, 537 F.3d 722, 727 (7th Cir. 2008). We review the sentence for an abuse of discretion and will affirm if the district court gave meaningful consideration to the sentencing factors and arrived at an objectively reasonable sentence. *United States v. Wachowiak*, 496 F.3d 744, 748 (7th Cir. 2007).

## B. Prior drug conviction

Johnson believes the district court should have excluded his 2007 conviction for distributing cocaine. The Government claims it offered the evidence to show Johnson's knowledge and lack of mistake, but Johnson contends that the conviction was improper propensity evidence under Rule 404(b) of the Federal Rules of Evidence. Because we find that any error in admitting Johnson's prior conviction was harmless, we need not address the question of whether Rule 404(b) permitted it.

The Government presented very strong evidence of Johnson's guilt in the form of audio and video recordings of Johnson making arrangements to meet with the informant and then apparently selling him drugs at those meetings. The officers' testimony regarding the procedures they followed in monitoring those controlled buys corroborated the informant's testimony. Thus, even assuming that the district court erred by taking notice of Johnson's prior conviction, and taking into account the other evidence admitted regarding his prior acts, we cannot say that "the error had a substantial influence over the jury." *See Owens*, 424 F.3d at 653 (internal quotation omitted). Nor can we say that "the result reached was inconsistent with substantial justice." *See id*. Therefore, we will not reverse the trial court on this ground.

## C. Prior drug sales evidence

For similar reasons, we come to the same conclusion with regard to Johnson's challenge to the district court's admission of evidence that he previously sold crack cocaine to

the informant at least fifteen times and to his brother on at least one occasion. He once again argues that the district court's decision was improper under Federal Rule of Evidence 404(b). First, he argues that the Government failed to provide notice that it planned to introduce the evidence prior to trial, as the rule requires. *See* Fed. R. Evid. 404(b). Second, he argues that the Government offered the evidence in order to show his propensity for selling drugs, a purpose the rule prohibits. *See id.* Johnson's first claim clearly falls flat because the Government did in fact provide him with notice of its intent to use this evidence more than two months in advance of trial. Thus, we focus on his second argument.

Once again, however, we need not decide whether the admission of this evidence was error. As noted above, Johnson is held to an even higher standard in this case than with regard to the admission of his prior conviction because he failed to object to the evidence at trial. *See Sebolt*, 460 F.3d at 916. Johnson fails to meet this higher, plain error standard because the error was harmless here as well. The fact remains that the evidence of Johnson's guilt was substantial. Thus, we cannot say that "the error affected the outcome of the district court proceedings," *see Shearer*, 379 F.3d at 456, and we will not reverse on this ground.

D.  Jail telephone calls

Next, we address Johnson's challenge of the district court's decision to allow the Government to play the recordings of telephone calls he made while in jail awaiting

trial. The recordings began with statements identifying them as calls made from the Perry County Jail. Johnson argues that the calls unfairly prejudiced him by putting the jury on notice that he was incarcerated, a fact that the Government reiterated during closing arguments. He also argues that they were irrelevant to the issues presented by the case. Johnson objected to the tapes both at and before trial.

The Government offered the recordings as evidence of Johnson's consciousness of guilt, which is an appropriate basis for admitting evidence of threats. *See, e.g., United States v. Calabrese*, 572 F.3d 362, 368 (7th Cir. 2009) (citing cases). However, Johnson claims the recordings do not contain threats or that concluding that they do would require too much speculation. He notes that the trial court found the Government's conclusions regarding the alleged threats too speculative to support an enhancement for obstruction of justice at the sentencing stage. He also points out that, by the Government's admission, the recordings were of poor quality. He argues, on the other hand, that by allowing the Government to play the tapes, the district court placed him in a position similar to a defendant forced to wear prison attire at trial. *See United States v. Martin*, 964 F.2d 714, 719 (7th Cir. 1992) (noting that this practice is forbidden).

There is no question that the recorded conversations in question may not have had anything to do with threatening or intimidating the informant. They ostensibly concern Johnson's attempt to sell a car to somebody. On the first recording, Johnson asks his associate if he remembers a

white man who was sitting on the curb one day and wanted to buy a car from the informant. He says that he needs to find the man to see if he still wants to buy the car "[b]ecause that's what's f---ing me up, you know?" On the second recording, Johnson tells the associate that he misunderstood Johnson in their last conversation. He repeats his description of the man trying to buy the car. Once again, he says that he needs to find the man to see if he still wants to buy the car, and describes two motels where the man stays—the Highway House and another motel near a middle school. He ends the conversation by saying, "I can use that money to get out of here, you know?"

Johnson claims that this conversation did in fact concern his attempts to sell a car and his hope that he could use the money from the sale to post bond. At trial, he presented evidence that he did, in fact, sell old cars that he fixed up. The Government counters by arguing that Johnson was actually describing the informant when he described the man trying to buy the car. The Government presented evidence that the informant, a white man, stayed at the Highway House and another motel that was near a middle school. Noting that Johnson would have known that he was being recorded, the Government argues that one could easily conclude that his vague references to selling the informant a car because that will help him "get out of here" are coded suggestions that his associate intimidate or threaten the informant. The district court agreed that such an interpretation was possible and reasonable, and thus admitted the recordings into evidence.

The fact that the district court interpreted the recordings as something other than threats during sentencing does not undermine the court's determination that another interpretation was reasonable. The trial court simply allowed the jury to choose from more than one reasonable interpretation, and then later made its own decision as to the most reasonable.

We agree with the district court that while Johnson did not explicitly instruct his associate to threaten the informant in the recordings, the jury could reasonably interpret the phone conversations in that manner. Thus, the trial court did not abuse its discretion in determining that the evidence was relevant. The only remaining question is whether its prejudicial effect outweighed its probative value.

We find the case law regarding the practice of requiring defendants to wear prison attire at trial to be distinguishable. We agree that Johnson may have been somewhat prejudiced by the fact that the jury learned that the calls were recorded while he was in jail. However, the occasional reference to the fact that Johnson had at some point been in jail is quite different than the "constant reminder of the accused's condition implicit in such distinctive, identifiable attire" that underlies the injustice inherent in requiring a defendant to stand trial in prison garb. *See Estelle v. Williams*, 425 U.S. 501, 504-05, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976). The Supreme Court has found that the defendant's prison attire is "likely to be a continuing influence throughout the trial" and that requiring such attire during trial is thus likely to undermine the presump-

tion of innocence and the defendant's right to a fair trial. *Id.* Given that Johnson faced a much diminished form of prejudice, and that the district court had to weigh this prejudice against the probative nature of the recordings, we find that the court did not abuse its discretion in admitting the tapes.

Johnson argues that, at the very least, the district court should have ordered the tapes redacted so that the jury would not hear the portion identifying the recordings as calls made from jail and given a limiting instruction regarding their use. However, Johnson did not make either of those requests at trial. Additionally, it is not clear that the Government could have redacted the tapes in a way that preserved their probative value but yet removed any reference to Johnson's presence in jail. One of the reasons Johnson's statements on the recordings can be interpreted as a threat is because he mentions that finding the man in question will help him "get out of here." (In fact, that statement also forms the basis for Johnson's innocent interpretation of the conversation.) Under the plain error standard, these additional arguments fail as well.

E.   Prior law enforcement contact evidence

Finally, we address Johnson's claim that it was improper for the Government to elicit testimony from one of the police officers indicating that Johnson had previously crossed paths with law enforcement. First, the officer testified that he was familiar with Johnson from previous "police-related" encounters he and his partner had with

Johnson. Second, he testified that he showed the informant a color booking photograph of Johnson prior to conducting the controlled buys so that the informant could verify the identity of the target of the investigation. Johnson argues that the prejudicial effect of this evidence outweighed any probative value it had in violation of Federal Rule of Evidence 403. While his brief is somewhat unclear, his reliance on *Owens*, 424 F.3d 649, a case concerning improper prior bad acts evidence under Rule 404(b), indicates he may also be objecting to the evidence on that ground.

The Government first argues that the officer's testimony that he knew Johnson from previous "police-related" conduct was not even necessarily prejudicial as Johnson's contact with the police might have been completely innocent. This is true, though it seems unlikely that the jury would come to such a conclusion in the context of a criminal trial, especially in light of the officer's reference to Johnson's booking photograph.

More importantly, we reject Johnson's claim that this case is akin to *Owens*. In *Owens*, we held that the district court committed error by admitting evidence that defendant, who was charged with bank robbery, had previously robbed the same bank branch years earlier. 424 F.3d at 656-57. In addition, we held that "[t]he egregiousness of the error [was] exacerbated" by the admission of a lineup photo taken in the aftermath of the earlier robbery showing the defendant and five other men seated, barefoot, and wearing identical prison jump suits and large signs with numbers around their necks. *Id.* at 657. This case is distinguishable from *Owens* for a number of reasons. First, in

the instant case, the officer simply made reference to a "booking photograph." In *Owens*, on the other hand, we noted the significance of the photo's publication, as well as the fact that the photo accompanied the jury into deliberations, where it "festered as a constant reminder that [the defendant] had at least once before been a prisoner." *Id.* Second, we reviewed the district court's decision for an abuse of discretion rather than for plain error. *Id.* at 653. Finally, we found that the error was not harmless given the relatively limited evidence of the defendant's guilt. *Id.* at 656-57.

Instead, this case is more analogous to *United States v. Simmons*, 581 F.3d 582 (7th Cir. 2009). In that case, the Government displayed a mug shot showing the top part of the defendant's bright orange jump suit to the jury during its closing argument. *Id.* at 586. After the defendant objected, the district court ordered the prosecution to take down the photo and proceed. *Id.* We reviewed the district court's decision for an abuse of discretion and held that because the court corrected the error immediately, the resulting harm was negligible. *Id.* at 588-89 (noting that ruling was not dependent on the fact that the average juror may not have been able to tell that the photograph was a mug shot). If the brief display of a mug shot to the jury is not reversible error under an abuse of discretion standard of review, then the brief mention of such a photograph cannot be reversible under the plain error standard.

We therefore affirm Johnson's conviction.

F.  Sentencing

Johnson's final challenge is to the district court's decision to impose a sentence of 300 months' incarceration. Johnson concedes that he qualified as a career offender with a criminal history category score of VI and thirteen prior convictions, including multiple crimes of violence, and accepts that this sentence falls within the applicable Guidelines range of 262 to 327 months. But, he takes issue with the district court's decision not to depart downward from the Guidelines range in light of his troubled childhood, history of substance abuse, and untreated psychological disorders.

Johnson did suffer through a tremendously difficult childhood. At the age of 8, he witnessed his father kill his mother and inflict a non-fatal gunshot wound on his grandmother. His father committed suicide several days later. Johnson never received counseling to help him cope with those events. Since then, and as a result of those incidents, Johnson has struggled with substance abuse and various psychological disorders. In fact, he apparently turned to alcohol in part because his father forced him and his siblings to drink when they were children.

Given this background, a twenty-five year sentence for selling $150 worth of crack cocaine may seem harsh at first blush. Indeed, the district court noted the severity of the tragedy that Johnson endured and stated that his difficult childhood was "clearly a mitigating factor." But, the court also considered Johnson's extensive criminal history, as well as factors such as deterrence, protecting society, and providing necessary treatment. On balance, the court

decided that 300 months was an appropriate sentence. Because the court did give meaningful consideration to the sentencing factors, we will only overturn the sentence if it was objectively unreasonable. *Wachowiak*, 496 F.3d at 748. We are not unmoved by Johnson's disturbing history, but we also see the merit to the district court's concern that giving a reduced sentence would not be in society's best interest. Thus, we find that the district court did not abuse its discretion and we affirm Johnson's sentence.

### III. Conclusion

For the foregoing reasons, we AFFIRM defendant's conviction and sentence.